IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH ZALESIAK, as Special Administrator of the Estate of BARBARA ABRAHAMSON, Deceased, <br><br> Plaintiff, <br> v. <br><br> UNUMPROVIDENT CORPORATION, and THE PAUL REVERE LIFE INSURANCE COMPANY, <br><br> Defendant . | Case No. 06 C 4433 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Zalesiak ("Zalesiak"), as Special Administrator of the Estate of Barbara Abrahamson ("Abrahamson"), filed an eight-count Complaint against Defendants UnumProvident Corporation ("UPC") and The Paul Revere Life Insurance Company ("PRL," together with UPC, "Defendants") in the Circuit Court of Cook County, Illinois, setting forth, as counts 1 - 7 of the complaint, causes of action for bad faith, fraudulent misrepresentation, negligent misrepresentation, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, wrongful death, and, as count 8 of the complaint, a cause of action for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961, et. seq. Defendants removed the action to this Court on the grounds that Zalesiak's state law claims were completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq. Thereafter, Defendants moved to dismiss counts 1 - 7 of the Complaint as completely preempted by ERISA and also moved to dismiss the RICO count for failure to properly allege a violation of the RICO statute.

Zalesiak responded to Defendants' Motion to Dismiss with an amended complaint, setting forth only two causes action: the first under RICO and the second under ERISA. Now before the Court is Defendants' motion to dismiss the amended complaint.[1] Defendants argue: (1) that Zalesiak's RICO claim is preempted by ERISA; (2) that Zalesiak has otherwise failed to state a RICO claim; and (3) that Zalesiak's ERISA claim must be dismissed for its failure to name the benefit plan as a defendant. For the reasons stated below, Defendants' motion to dismiss is granted.

## **Statement of Facts**[2]

Zalesiak alleges that at all times relevant to this litigation, UPC offered disability insurance policies to employers in the state of Illinois including Harris Hospital Supply, Inc. ("Harris"), where Abrahamson was employed at all times relevant to this litigation. PRL was, at all times relevant to this litigation, a wholly-owned subsidiary of UPC and the plan administrator for the disability insurance policies sold by UPC. In its capacity as plan administrator, PRL served as an agent of UPC.

Zalesiak alleges that, in order to control the costs of the disability policies issued by UPC, PRL and UPC engaged in a scheme whereby PRL, acting as plan administrator with exclusive decisionmaking authority with respect to such policies, intentionally denied benefits requested by certificate holders without reviewing their claims. The goal of the scheme was to frustrate legitimate

---

[1]The Court notes Zalesiak's failure to comply with Local Rule 7.1, which sets a 15-page limit on all memoranda of law and warns that non-compliant briefs are filed subject to being stricken. Ignoring Local Rule 7.1, Zalesiak filed a 26-page memorandum of law in response to the motion to dismiss without first seeking leave of this Court to do so. While the Court has considered Zalesiak's oversized brief in deciding the motion to dismiss, the parties are advised that no further nonconformity with the Local Rules will be tolerated.

[2]The facts set forth herein are taken from Plaintiff's Amended Complaint at Law.

2

attempts to claim benefits under the policies with the intent that potential beneficiaries would either abandon those claims or die, either of which events would provide a financial benefit for Defendants.

Harris purchased a group disability policy (the "Policy") from UPC. Under the terms of the Policy, if an employee of Harris were to become disabled, that employee would be paid, on a monthly basis, a specific sum of money for the duration of the employee's disability. At some point prior to March 4, 1997, Abrahamson – a Harris employee and certificate holder under the Policy – began to experience severe pain and other physical problems such that she became disabled as defined by the terms of the Policy.

On or about March 4, 1997, Abrahamson submitted a disability claim, including medical records containing physician opinions as to the nature and extent of her disability as required by the terms of the Policy. On July 29, 1997, PRL mailed Abrahamson a letter indicating that it had reviewed the materials she had provided and that it had determined that she was not qualified to receive disability benefits under the terms of the Policy. Accordingly, PRL denied Abrahamson's claim for benefits. Zalesiak alleges that when PRL sent this letter to Abrahamson, it knew that it either had not conducted any review of the materials Abrahamson had provided or that such review indicated that Abrahamson was indeed qualified to receive disability benefits.

On August 21, 1997, in accordance with the terms of the Policy, Abrahamson submitted a written appeal of the denial of her claim for disability benefits. On November 1, 1997, PRL mailed Abrahamson a letter advising her that its earlier decision denying her claim for benefits had been reconsidered and reversed.

On October 29, 1998, PRL mailed Abrahamson a letter advising her that her disability benefits were no longer payable and requiring that Abrahamson submit additional information to

3

justify her claim. Zalesiak alleges that when PRL sent its October 29 letter to Abrahamson, it knew that Abrahamson was, in fact, still entitled to receive benefits. Abrahamson submitted the additional information PRL required. At some point in June 1999, PRL mailed Abrahamson a letter advising her that her claim for disability benefits had been reviewed and that her benefits would be reinstated.

Abrahamson's benefits were cut off again the following summer. On July 22, 2000, PRL sent her another letter advising her that her benefits were no longer payable and requiring additional information to justify her claim. Zalesiak alleges that when PRL sent its July 22 letter to Abrahamson, it knew that Abrahamson was, in fact, still entitled to receive disability benefits. On September 26, 2000, Abrahamson field an appeal of the July 22, 2000 decision denying her benefits. Abrahamson submitted the additional information PRL required on or about March 4, 2001.

Knowing that she was still entitled to receive disability benefits, PRL affirmed the denial of Abrahamson's benefits by letter mailed April 25, 2001. However, on February 21, 2002, PRL sent Abrahamson a letter indicating that her claim for disability benefits had been reviewed and her benefits reinstated.

Almost a year later, on February 2, 2003, PRL sent Abrahamson yet another letter indicating that her disability benefits were no longer payable and requiring Abrahamson to submit additional information to justify her claim. As before, Zalesiak alleges that PRL sent the February 2, 2003 letter knowing that Abrahamson was, in fact, entitled to receive disability benefits. Abrahamson appealed PRL's February 2, 2003 determination on May 27, 2003. PRL acknowledged receipt of Abrahamson's appeal and, via a form letter sent on July 11, 2003, PRL requested additional time to review the records Abrahamson submitted in connection with her appeal of PRL's February 2, 2003 determination that Abrahamson's disability benefits were no longer payable. Zalesiak alleges that

4

PRL requested additional time to review Abrahamson's records knowing that additional time was not necessary to review those records and that Abrahamson was still entitled to receive disability benefits.

On July 17, 2003, PRL sent Abrahamson a letter affirming its February 2, 2003 decision denying Abrahamson's claim for disability benefits. PRL indicated that Abrahamson was no longer qualified to receive such benefits even though PRL knew that Abrahamson was still qualified to receive disability benefits. Abrahamson submitted additional records to PRL on November 5, 2003. Over the following months, PRL sent Abrahamson four letters (on November 13, 2003; December 15, 2003; February 4, 2004; and March 3, 2004) requesting additional time to review medical records submitted by Abrahamson in support of her claim for disability benefits. PRL sent each of those four letters knowing that Abrahamson was entitled to benefits and, as such, that it did not need any additional time to review her records. Then, on March 24, 2004, PRL sent Abrahamson another letter affirming its February 2, 2003 decision denying her claim for disability benefits, knowing full well that Abrahamson was entitled to receive disability benefits.

In early April 2004, and in response to PRL's March 24, 2004 letter, Abrahamson sent additional support for her claim for disability benefits to UPC. Thereafter, on April 14, 2004, PRL sent Abrahamson a letter indicating that it would review the additional materials Abrahamson had submitted in support of her disability claim. When PRL sent the letter, it knew that Abrahamson was entitled to receive disability benefits and, as such, there would be no review of those additional materials. Thereafter, PRL sent Abrahamson three more letters indicating a need for additional time to review the materials Abrahamson submitted in support of her claim, all the while knowing that Abrahamson was entitled to disability benefits and that no further review of her supporting materials

was necessary. Finally, on July 30, 2004, PRL sent a letter to Abrahamson indicating that it had decided to reverse its decisions of February 2, 2003 and February 24, 2004 denying her claims for disability benefits.

Zalesiak alleges that from March 1997 through July 2004, UPC and PRL engaged in a course of conduct wherein certificate holders of the disability insurance policy issued by UPC and administered by PRL were intentionally denied benefits without review of their claims in an effort to discourage the submission of additional claims and with the intent that potential beneficiaries, including Abrahamson, would abandon their claims for disability or die, which events would result in a monetary gain for Defendants. Zalesiak alleges that by reason of this scheme, Abrahamson did not receive disability benefits to which she was entitled.

## Discussion

### I.    Standard.

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and view the allegations in the light most favorable to plaintiffs. *See, e.g.*, *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). The complaint, however, must allege that each element of a cause of action exists in order to withstand a motion to dismiss. *766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 249 F. Supp. 2d 974, 982 (N.D. Ill. 2003) (citing *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992)). Dismissal for failure to state a claim is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## II. Zalesiak's RICO Claim is Not "Preempted" by ERISA.

Defendants' lead-off argument is that Section 502 of ERISA provides the exclusive remedy to redress the conduct that allegedly deprived Abrahamson of a full and fair review of her disability claim and, therefore, Zalesiak's RICO claim is "preempted" by ERISA.[3] Defendants have not identified any authority standing for the proposition that a RICO claim may be "preempted" by ERISA. Instead, they cite to *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654 (7th Cir. 1992), a case in which the Seventh Circuit held that a RICO action based upon predicate acts that also violate federal labor law is incompatible with the role of the National Labor Relations Board in implementing labor policy.

In *Talbot*, "it was vital . . . that the underlying conduct of the plaintiffs' RICO claim [was] wrongful *only by virtue of the labor laws*." *Baker v. IBP, Inc.*, 357 F.3d 685, 688-89 (7th Cir. 2004) (quoting *Talbot*, 961 F.2d at 662) (internal quotations omitted) (emphasis in original). But "[w]hen the predicate offenses of a particular claim under RICO are federal crimes other than transgressions of the labor laws, no dispute falls within the Labor Board's primary jurisdiction, even if labor relations turn out to be implicated in some other fashion." *Id.* at 689. In this case, the underlying conduct of Zalesiak's RICO claim – a string of alleged violations of 18 U.S.C. § 1341 (mail fraud) – cannot be described as "wrongful only by virtue of ERISA." (Defs.' Mem. in Support of Mtn. to Dismiss). Accordingly, the Court concludes that Zalesiak's RICO claim is not "preempted" by ERISA.

---

[3]"Federal statutes do not 'preempt' other federal statutes." *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004)

**III.    The Complaint Fails to State a RICO Claim.**

RICO does not cover all instances of wrong-doing. *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). There are four elements to a claim under 18 U.S.C. 1962(c): "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.*; *accord Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997) ("RICO prohibits a 'person . . . associated with any enterprise . . . to conduct . . . such enterprise's affairs through a pattern of racketeering activity.'") (quoting 18 U.S.C. 1963(c)). The RICO "person" need not be a natural person. *Fitzgerald*, 116 F.3d at 226 (citing 18 U.S.C. 1961(3)). "Racketeering activity" is a term of art that includes violating the federal mail and wire fraud statutes. *Id.* (citing 18 U.S.C. 1961(1)(B)). A RICO "enterprise" is an "ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decisionmaking. *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (quoting *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). The RICO defendant, or "person" must be "separate and distinct" from the enterprise. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 n.3 (7th Cir. 2000).

Zalesiak alleges that PRL (the RICO "person") conducted the affairs of an enterprise comprised of UPC and PRL through a pattern of racketeering activity – namely, fraudulent claims denials sent through the U.S. mail. However, "[a] firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself." *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999); *see also Stachon*, 229 F.3d at 676 n.3 (same). Accordingly, inasmuch as the complaint identifies the RICO enterprise as UPC and PRL, Zalesiak has failed adequately to allege a RICO enterprise and, as such, has failed to state a claim under 18 U.S.C. 1962(c).

Even if Zalesiak could allege an enterprise comprised of UPC and PRL, she would still have to allege – in order to survive a motion to dismiss – that the person associated with the enterprise – PRL – conducted or participated directly or indirectly in the conduct of such enterprises's affairs through a pattern of racketeering activity. *Richmond*, 52 F.3d at 646. "To be liable under § 1962(c), that person 'must participate in the operation or management of the enterprise itself.'" *Id.* (citing *Reeves v. Ernst & Young*, 113 S. Ct. 1163, 1173 (1993)). In order to participate in the operation or management of the enterprise, a RICO person must have "some part in directing" the affairs of the enterprise. *Reeves*, 113 S. Ct. at 1170. That is to say, "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Richmond*, 52 F.3d at 646 (quoting *Reeves*, 113 S. Ct. at 1173).

In this case, taking Zalesiak's allegations as true, she has alleged that PRL has engaged in a pattern of racketeering activity by repeatedly mailing Abrahamson fraudulent denials of her claims for disability benefits. However, this amounts to nothing more than an allegation that PRL – as plan administrator – conducted its *own* affairs through a pattern of racketeering activity, which allegation does not suffice to state a RICO claim. *Reeves*, 113 S. Ct. At 1173. Zalesiak has not alleged that PRL conducted or participated in the conduct of any "enterprise's" affairs apart from its own. For the same reason, even interpreting Zalesiak's complaint as alleging that PRL, as the RICO "person," conducted the affairs of UPC – as the RICO enterprise – through a pattern of racketeering activity would not save Zalesiak's RICO claim absent some additional allegations that would serve to explain how PRL participated in the control of UPC. *Fitzgerald*, 116 F.3d at 227 (citing *Reeves*, 113 S. Ct. at 1170) ([the Seventh Circuit's] decision in [*Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384 (7th Cir. 1984)] allowed the subsidiary to be deemed the RICO "person" conducting the

affairs of its parent through a pattern of racketeering activity," but the Supreme Court's decision in *Reeves* imposes the requirement, in that situation, that "the subsidiary participate in the control of the parent."). While the Complaint does not allege that PRL conducted UPC's affairs through a pattern of racketeering activity, it does not foreclose that possibility. Accordingly, Zalesiak's RICO claim is dismissed without prejudice.

**IV.   Zalesiak's ERISA Claim Must Be Dismissed Because a Claim to Recover Benefits Under ERISA Should be Brought Against the Plan as an Entity.**

In addition to her RICO claim against PRL, Zalesiak also brings a claim under ERISA to recover the disability benefits allegedly due Abrahamson. Defendants argue that Zalesiak's ERISA claim must be dismissed because the Seventh Circuit only permits such claims to be brought against the ERISA plan as an entity. *See Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001) (quoting *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) for the proposition that "[the Seventh Circuit] continually [has] noted that 'ERISA permits suits to recover benefits only against the Plan as an entity.'"). Zalesiak correctly notes, however, that there are exceptions to the general rule that only a Plan may be a defendant to an ERISA action to recover benefits. *See Mein v. Carus Corp.*, 241 F.3d 581, 584 (7th Cir. 2001) (the rule that the Plan is the only proper defendant to an ERISA claim is "much less established than the defendants would have us believe.:); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) (because "plan documents themselves refer to ComEd and the plan nearly interchangeably, and the company designated itself as the plan's agent for service of process[,] it is not surprising that Rosemary sued ComEd instead of the plan.").

Defendants argue that "the Plan documents in the present case specifically identify the name of the Plan as 'The Paul Revere Prism 2+ Group Insurance Trust.'" (Defs.' Mem. In Support of Mtn. to Dismiss at p. 12). Without specifically denying that point, Zalesiak argues that (1) "there was significant ambiguity regarding the identity of the 'plan' in the policy documents provided;" and (2) "the policy documents provided by these Defendants contain numerous references to 'the Paul Revere Wholesale Trade Industry Trust.'" (Pltf.'s Response to Mtn to Dismiss at p. 17-18). Without deciding the issue whether there is any ambiguity regarding the identity of the plan in the policy documents themselves, it appears to the Court that any such ambiguity has been resolved as the parties now appear to agree that the plan at issue is "The Paul Revere Prism 2+ Group Insurance Trust." Accordingly, there being no further ambiguity with respect to the identity of the plan, Zalesiak's ERISA claim is dismissed with leave to refile that claim against The Paul Revere Prism 2+ Group Insurance Trust. *Jass*, 88 F.3d at 1490.

## Conclusion

For the reasons stated herein, the complaint is dismissed without prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: April 30, 2007