**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEBORAH ZALESIAK, as Special Administrator of the Estate of BARBARA ABRAHAMSON, Deceased,<br><br>    Plaintiff,<br>v.<br><br>UNUMPROVIDENT CORPORATION, and THE PAUL REVERE PRISM 2+ GROUP INSURANCE TRUST,<br><br>    Defendant. | Case No. 06 C 4433<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Zalesiak ("Zalesiak"), as Special Administrator of the Estate of Barbara Abrahamson ("Abrahamson"), filed an eight-count Complaint against Defendants UnumProvident Corporation ("UPC") and The Paul Revere Life Insurance Company in the Circuit Court of Cook County, Illinois, setting forth, as counts 1 - 7 of the complaint, causes of action for bad faith, fraudulent misrepresentation, negligent misrepresentation, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, wrongful death, and, as count 8 of the complaint, a cause of action for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961, et. seq. Defendants removed the action to this Court on the grounds that Zalesiak's state law claims were completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq. Thereafter, Defendants moved to dismiss counts 1 - 7 of the Complaint as completely preempted by ERISA and also moved to dismiss the RICO count for failure to properly allege a violation of the RICO statute.

1

Zalesiak responded to Defendants' Motion to Dismiss with an amended complaint, setting forth only two causes action: the first under RICO and the second under ERISA. Defendants' moved to dismiss the amended complaint arguing (1) that Zalesiak's RICO claim was preempted by ERISA; (2) that Zalesiak has otherwise failed to state a RICO claim; and (3) that Zalesiak's ERISA claim must be dismissed for its failure to name the benefit plan as a defendant. This Court granted Defendants' Motion on the basis that Zalesiak failed to state a RICO claim and failed to bring her ERISA action against the Plan as an Entity. Zalesiak filed a Second Amended Complaint this time against UPC and The Paul Revere Prism 2+ Group Insurance Trust ("PRL," together with UPC, "Defendants") . Now before the Court is UPC's Motion to Dismiss Count I of the Second Amended Complaint– Zalesiak's RICO claim.

For the reasons stated herein, Count I is dismissed with prejudice.

## STATEMENT OF FACTS

Zalesiak alleges that UPC offered disability insurance policies to employers in the state of Illinois including Harris Hospital Supply, Inc. ("Harris"), where Abrahamson was employed was a wholly-owned subsidiary of UPC and the plan administrator for the disability insurance policies sold by UPC. In its capacity as plan administrator, PRL served as an agent of UPC.

On and before March 4, 1997 through July 30, 2004, PRL regularly retained the services of HealthSouth Rehabilitation Center ("HealthSouth") to provide assistance and support for its evaluation of long term disability benefit claims. Specifically, PRL retained HealthSouth to conduct functional capacity assessments ("FCA") of long term disability claimants including Abrahamson. During that time period, PRL would refer to the results of HealthSouth's FCAs as a basis for PRL's denial of claims for long term disability ("LTD") benefits. Zalesiak claims that an enterprise existed

among UPC, PRL, HealthSouth and Harris whereby employment compensation packages would be purchased at a reduced rate by Harris from UPC. UPC offered disability benefits packages at a reduced rate to employers, including Harris, by limiting is own costs through unjustified and false denials of benefit claims. Zalesiak claims that in furtherance of the enterprise to defraud and in its capacity as the plan administrator, PRL maintained exclusive authority and control over all decisions related to the administration of the benefit plans. During the March 4, 1997 through July 30, 2004 time period, PRL managed and controlled the enterprise by controlling the underwriting, offering, eligibility, administration, cost and profit associated with disability insurance polices that UPC sold. Harris profited by limiting its cost in providing LTD benefits.

Sometime prior to March 4, 1997, Harris purchased Group Disability Policy Number G56120, U1, M1 ("the policy") from UPC. Abrahamson was an employee of Harris and certificate holder under the policy. According to Zalesiak, on or about March 4, 1997, Abrahamson began experiencing severe pain and other physical problems such that she became disabled. She submitted a disability claim on March 4, 1997 providing her medical records in support of her disability. On July 28, 1997, PRL advised Abrahamson via the U.S. Mail that she was not qualified to received disability benefits under the terms of the policy. PRL's agent, Sandra DeGoff ("DeGoff") sent the letter knowing that a review of the material Abrahamson provided had not been conducted and/or knowing that the review indicated Abrahamson was indeed qualified to receive disability benefits. In doing so, PRL materially misrepresented that Abrahamson was not entitled to disability benefits with the intent to frustrate her efforts to obtain the benefits to the extent that she would abandon her plan to pursue them.

On August 21, 1997, Abrahamson submitted a written appeal of PRL's July 29, 1997

decision. On November 1, 1997, Janet Smith ("Smith") of PRL sent a letter indicating that the July 29, 1997 decision had been reversed and that Abrahamson's claim for disability benefits was approved.

On October 29, 1998, Kelly Briggs ("Briggs"), a PRL employee, wrote to Abrahamson and stated that her disability benefits were no longer payable and required Abrahamson to submit additional information to justify her claim. According to Zalesiak, Briggs did so knowing that Abrahamson was still entitled to receive disability benefits and materially misrepresented that Abrahamson was not entitled to them with the intent to frustrate her efforts to pursue her claim. Abrahamson submitted additional medical records. In June 1999, Kari Leudtke ("Leudtke"), a PRL employee, wrote that Abrahamson's claims were reinstated.

Approximately one year later, Leudtke wrote to Abrahamson that her disability benefits were no longer payable and required Abrahamson to submit additional information to justify her claim. Zalesiak alleges that Leudtke did so knowing Abrahamson was entitled to receive benefits and materially misrepresented that she was not so entitled in order to frustrate Abrahamson's efforts to pursue her claim. On September 25, 2000, Abrahamson appealed the July 22, 2000 decision denying her disability benefits. Leudtke wrote Abrahamson on April 25, 2001 and affirmed the July 22, 2000 decision. Again, Zalesiak alleges that PRL denied her claims and affirmed the decision not because Abrahamson wasn't disabled, but in order to frustrate her efforts to pursue her claim.

On March 4, 2001, Abrahamson submitted additional evidence, including medical records, to support her disability claim. On February 21, 2002, Leudtke wrote Abrahamson stating that her claim for disability benefits had been reviewed and her benefits reinstated. One year later, PRL

4

wrote Abrahamson requesting additional information to justify her claim which Zalesiak alleges was a material misrepresentation. On May 27, 2003, Abrahamson filed an appeal. On July 11, 2003, PRL requested additional time to review Abrahamson's appeal even though they knew that she was entitled to disability benefits. On July 17, 2003, PRL affirmed its February 2, 2003 decision. Abrahamson submitted additional records in November 2003 and PRL responded on November 13, 2003 and December 15, 2003 stating that it needed additional time to review her claim. PRL did so knowing that Abrahamson was entitled to review disability benefits.

On January 20, 2004, Abrahamson submitted more medical records and PRL wrote on February 4, 2004 and March 3, 2004 that it needed more time to review them. On March 24, 2004, Leudtke wrote that PRL affirmed its February 2, 2003 decision to deny Abrahamson's disability benefits. PRL did so knowing that she was entitled to review them. This pattern continued through July 30, 2004 whereby Abrahamson continued to submit medical records, PRL asked for time to review them, and PRL affirmed its decision to deny Abrahamson's benefits. On July 30, 2004, PRL sent a letter to Abrahamson setting forth its decision to reverse the February 2, 2003 and February 4, 2004 decisions denying disability benefits and reinstated Abrahamson's benefits.

Zalesiak alleges that from March 1997 through Abrahamson's death on July 24, 2004, UPC participated directly in the conduct of the enterprise through a pattern of racketeering, namely, the capricious and arbitrary denial of Abrahamson's claims without a qualified basis with the intent to defraud valid claimants. In doing so, Abrahamson did not receive disability benefits for fifty-two months while she was forced to participate in Defendants' scheme to unjustifiably and fraudulently deny her disability benefit claims.

5

**STANDARD**

Motions to Dismiss are construed in the light most favorable to the plaintiff. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). The court must take as true "all well-pleaded factual allegations and making all possible inferences from those allegations in" the plaintiff's favor. *Id.* (citation omitted). In order to state a claim, a plaintiff must allege facts that plausibly suggest he is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 2007 WL 1461066, *8 (May 21, 2007). To allege plausible grounds for relief, the complaint must allow a "reasonable expectation" that discovery will reveal evidence of illegality. *Id.* at 1965.

**DISCUSSION**

UPC moves to dismiss Count I on the basis that Zalesiak's RICO claim is barred by the applicable four year statute of limitations and that Zalesiak fails to state a valid RICO claim against UPC. The statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and need not be addressed in the complaint. *See U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). "[A] complaint states a claim on which relief may be granted whether or not some defense is potentially available." *United States v. N. Trust Co.*, 372 F.3d 886, 2004 WL 1381706 (7th Cir. 2004). Complaints need not anticipate defenses; the resolution of the statute of limitations comes after the complaint stage. *See id.*; (*citing Gomez v. Toledo*, 446 U.S. 635, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980)). This general rule is subject to an important exception. The statute of limitations issue may be resolved definitively on the face of the complaint when the plaintiff pleads too much and admits definitively that the applicable limitations period has expired. *See id.*; *Gypsum*, 350 F.3d at 626. "A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense . . . ." *Gypsum*, 350 F.3d at 626. Therefore, this Court must determine

whether Zalesiak has pleaded itself out of court in the allegations of the Second Amended Complaint.

The statute of limitations for RICO violations is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987). The four year period, however, does not begin to run until a plaintiff knows or should have known that he was injured. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004); *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1464-66 (7th Cir. 1992); *see also Rotella v. Wood*, 528 U.S. 549, 554 n.2, 555, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000) (rejecting an "injury and pattern discovery" rule for accrual but refusing to expressly require an "injury discovery" rule because of the possibility that an "injury occurrence" rule could be adopted); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 186-87, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997) (rejecting "last predicate act" rule for determining accrual). A cause of action under RICO accrues when the plaintiff knew or should have known about the injury even if the plaintiff has not yet discovered the pattern. *Rotella*, 528 U.S. at 554-555. "There must, of course, be a pattern of racketeering before the plaintiff's RICO claim accrues, and this requirement might delay accrual until after the plaintiff discovers her injury." *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992). Therefore, the RICO statute of limitations begins to accrue when both a "pattern of racketeering"- i.e. two predicate acts - has occurred, and when the plaintiff knows or should know he or she was injured.

Zalesiak alleges that in furtherance of the RICO enterprise, the RICO Defendants committed acts of mail fraud between March 4, 1997 and July 30, 2004. *See* 18 U.S.C. § 1341 (defining elements of mail and wire fraud). Namely, Defendants "scheme" to defraud concerned a series of material misrepresentations contained in letters sent via U.S. Mail whereby PRL denied

Abrahamson's disability benefits or requested more time to review them knowing that Abrahamson was entitled to benefits and knowing that additional time was not necessary to review the prior decisions because Abrahamson was disabled. Defendants' conduct was done in furtherance of their plan to frustrate Abrahamson's efforts to purse her claim for disability benefits to the point that she would abandon them. The Court views Zalesiak's allegations in the light most favorable to Plaintiff and accepts for purposes of this analysis that each alleged count of mail fraud would, indeed, support Zalesiak's allegation of a predicate act of "racketeering" under RICO. Zalesiak alleges that the first predicate act of mail fraud occurred on July 29, 1997 when PRL mailed a letter to her containing misrepresentations about the denial of her disability benefits claim. 2d. Am. Cplt. ¶ 27. The second predicate act occurred on October 29, 1998 when Briggs mailed Abrahamson a letter stating that her benefits were no longer payable even though Briggs knew that Abrahamson was entitled to receive them. 2d. Am. Cplt. ¶ 30. Thus, a "pattern" of racketeering activity existed on October 29, 1998, the date of the second alleged predicate act of mail fraud. *See* 18 U.S.C. §1961 (5) (defining a "pattern" as "at least two acts of racketeering activity...the last of which occurred within ten years...after the commission of a prior act of racketeering activity.). At the latest, the Second Amended Complaint alleges a pattern of racketeering activity existed by April 25, 2001 based upon four alleged acts of mail fraud occurring over a period of nearly four years. 2d. Am. Cplt. ¶¶ 27, 30, 33, 35.

The statute of limitations period does not begin to run solely when the underlying RICO cause of action becomes legally actionable. To begin the statute of limitations period in a RICO case, the Plaintiff must also suffer injury and become aware of his or her injury, or should have become aware of such injury through reasonable diligence. *McCool*, 972 F.2d at 1464-65.

Arguably, Plaintiff knew of her injury on July 29, 1997– the date that PRL first denied her claim even though Abrahamson was qualified to receive benefits. Even assuming for argument's sake that Abrahamson didn't realize that she had been injured with the first denial, Abrahamson certainly knew or should have known that she was injured when she appealed the July 22, 2000 decision denying her request for benefits on September 26, 2000, or at the latest, on April 25, 2001 when PRL sent a letter affirming its decision to deny her benefits. 2d. Am. Cplt. ¶ 35. The present action was not commenced until July 25, 2006, which is more than four years after Abrahamson knew or should have know of her injury and long after several predicate acts of mail fraud had occurred.

Despite Zalesiak's allegations of at least four separate acts of mail fraud between March 4, 1997 and April 25, 2001 and four fraudulent denials or suspensions of her benefits, Zalesiak argues that Abrahamson did not discovery her injury until her benefits were denied for a fourth time on February 2, 2003. A cause of action under RICO accrues when the plaintiff knew or *should have known* about the injury. *Rotella*, 528 U.S. at 554-555. Between July 29, 1997 and November 1, 1997, Abrahamson did not receive benefits for three months, between October 29, 1998 and June 1999, she did not receive benefits for approximately 8 months, and between July 22, 2000 and February 21, 2002, Abrahamson did not receive benefits for 19 months. 2d. Am. Cplt. ¶¶ 27, 30, 32, 33, 35, 37. Taking Zalesiak's allegations as true, Abrahamson's benefits were denied, delayed, or suspended for combined period of 2 ½ years between July 29, 1997 and February 21, 2002. During that same time period, Zalesiak pleads that Defendants committed at least four acts of mail fraud and she alleges that they did so knowing that Abrahamson was entitled to receive benefits based upon the medical records that she submitted.

Abrahamson's disability benefits were delayed, denied, or suspended for nearly 2 ½ years

prior to February 21, 2002. Therefore, even taking the most generous review of the predicate acts into account as the date of establishment of a cause of action, Plaintiff unquestionably knew or should have known that she was injured during the time period long before the fourth denial of her claim. Whether Abrahamson knew a RICO enterprise existed at this point is irrelevant, because "a RICO claim accrues when the Plaintiff discovers her injury even if she has not yet discovered the pattern of racketeering." *McCool*, 972 F.2d at 1465. Accordingly, Zalesiak's has pleaded herself out of court by alleging (and thus admitting) the ingredients of a defense.

In her Response, Zalesiak argues that her Second Amended Complaint is timely pursuant to the separate accrual rule. The separate accrual rule applies to new events by the enterprise that lead to new injuries. *See McCool*, 972 F.2d at 1465. A new RICO cause of action can accrue with each separate injury, but "[d]ifferent injuries flowing from the same conduct are not usually actionable in separate lawsuits." *McCool*, 972 F.2d at 1465. "[T]he plaintiff cannot use an independent, new act as a bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 181, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997). Zalesiak argues that with each denial and/or delay of her disability benefits was a new act and a new injury, but does not allege new acts or new injuries in her Second Amended Complaint. The Defendants' acts were the same– namely, delaying or thwarting Abrahamson's pursuit of her disability benefits claim so that Abrahamson would be frustrated to the point of abandoning her claims. More important, Abrahamson's injuries were the same– namely, Abrahamson suffered financial injuries due to the "fifty-two (52) months [she] was forced to participate in Defendant's scheme by enduring the unnecessary process of appealing Defendant's unjustified and fraudulent denial of her claims for disability benefits." 2d. Am. Cplt. ¶ 62.

Based upon the aforementioned allegations, this Court finds that *McCool*'s separate accrual rule is inapplicable. The injuries allegedly sustained as a result of the predicate acts that occurred after July 2002, which are within the four-year limitations periods, are not "entirely unlike" the injuries allegedly sustained by Abrahamson prior to July 2002, which are outside the limitations period. *See McColl*, 972 F.2d at 1462; *See also Limestone Development Corp*. 473 F.Supp. 2d 858, 872 (N.D. Ill. 2007) (the separate accrual rule did not apply to the plaintiff's RICO claim because the injury was the same, namely, "delaying or thwarting" the plaintiff's real estate development project so that the plaintiff would be forced to sell its property ast less than fair market value).

Finally, Zalesiak argues that the doctrines of equitable estoppel and tolling prohibit dismissal of her Second Amended Complaint. The doctrine of equitable estoppel is applicable if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations. *Cada v. Baxter HealthCare Corp*., 920 F.2d 446, 450-451 (7th Cir. 1990), *cert. denied*, 115 L. Ed. 2d 1079, 111 S. Ct. 2916 (1991) (*citing Holmberg v. Armbrecht*, 327 U.S. 392, 396-97, 66 S. Ct. 582, 584-85, 90 L. Ed. 743 (1946)); *Mull v. ARCO Durethene Plastics, Inc*., 784 F.2d 284, 292 (7th Cir. 1986); *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983). Equitable estoppel is "available only under limited circumstances." *Smith v. City of Chicago Heights*, 951 F.2d 834, 840-41 (7th Cir. 1992) (*quoting Aungst v. Westinghouse Elec. Corp*., 937 F.2d 1216, 1225 (7th Cir. 1991)). If the plaintiff intends to invoke the doctrine of equitable estoppel, she must plead specific facts to support the court's tolling of the statute of limitations, such as defendant's active concealment of the fraud or specific acts on the part of the defendant that prevented plaintiff from suing within the limitations period. *Id.* Plaintiffs have not alleged that the Defendants took active steps to prevent Plaintiffs from suing in time, as is required by the federal doctrine of equitable

estoppel. Therefore, Plaintiffs' equitable estoppel argument is unavailing and we turn to the question of whether the statute of limitations should be tolled under the doctrine of equitable tolling.

Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451; (*citing Holmberg*, 327 U.S. at 397, 66 S. Ct. at 585); *Mull*, 784 F.2d at 291). Equitable tolling may delay the running of the RICO statute of limitations while a victim diligently investigates the possible existence and extent of a pattern of racketeering. *McCool*, 972 F.2d at 1456. When invoking the doctrine of equitable tolling, a plaintiff must plead specific facts to support the court's conclusions that she exercised due diligence and that the statute of limitations must be tolled. *Cada*, 920 F.2d at 452. The plaintiff, by the exercise of reasonable diligence, must only have discovered that the defendant engaged in a "possible violation" of the law. *Cada*, 920 F.2d at 451 (stressing that "the qualification 'possible' is important"). In Zalesiak's Response, she argues that the tolling doctrines apply because "implicit in the allegations" is the fact that Defendants concealed their purpose through each act of mail fraud.[1] This Court cannot agree. There are no allegations in the Second Amended Complaint that support the a conclusion that Abrahamson exercised due diligence and that the statute of limitations must be tolled.

Moreover, the Seventh Circuit has held that "when . . . the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so. The presumption will be more easily rebuttable the nearer the date of obtaining the information is to the date at which the

---

[1] In fact, none of PRL's requests for more time occurred prior to the running of the statute of limitation.

statutory period runs out." *Cada*, 920 F.2d at 453. The court concluded that an interval of eight months between plaintiff's obtaining the necessary information and the end of the limitations period for his claim was "huge in the circumstances." *Id*. at 453. Zalesiak will be unable to rebut the *Cada* presumption. Zalesiak filed her claim on July 25, 2006– eight years and three months after the claim accrued (using the October 29, 1998 date). Even if it were true that Abrahamson did not know she had a claim until February 2, 2003, Plaintiff waited more than three years from that date to file her complaint and more two years after Abrahamson's death. This time period is simply too long to entitle the Plaintiff to equitable tolling of the limitations period. For the foregoing reasons, Zalesiak's RICO claim is untimely and is dismissed with prejudice.

Because this Court finds that Count I is untimely, there is no need to consider Defendants' other bases for dismissal. However, this Court also finds that even if Zalesiak had timely filed her RICO claim, Count I fails to state a cause of action. Zalesiak must allege not only that a viable RICO enterprise existed, but also that UPC, as the RICO "person" participated in the operation or management of the enterprise through a pattern of racketeering activity. *See Goren v. New Vision Int'l, Inc*., 156 F.3d 721, 727 (7th Cir. 1998). ("[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself."); *Richmond v. Nationwide Cassell LP*, 52 F. 3d 640, 646 (7th Cir. 1995) ("[L]iabilty depends on showing that the defendants conducted or participated in the conduct of an 'enterprise's affairs,' not just their own affairs." (*quoting Reeves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

This Court dismissed Zalesiak's Amended Complaint on the basis that she had alleged, at

most, that PRL conducted its own affairs through various alleged acts of mail fraud. We declined to dismiss the Amended Complaint with prejudice in the event that Zalesiak might attempt to allege that PRL, as the RICO "person," conducted the affairs of its parent company, UPC, through a pattern of racketeering activity. Zalesiak fails to correct the deficiencies in her Second Amended Complaint. In Zalesiak's third attempt to plead a cause of action, she substitutes UPC as the RICO "person" in lieu of PRL. However, Zalesiak fails to allege any facts demonstrating that UPC directed the affairs of a racketeering enterprise. In fact, Zalesiak pleaded that PRL managed and controlled the enterprise by controlling the underwriting, offering, eligibility, administration, cost and profit associated with disability insurance polices that UPC sold. Nearly all of Zalesiak's allegations, including the predicate acts of mail fraud, concern PRL's conduct, not UPC's. Instead, Zalesiak pleads only that UPC offered disability benefit package at a reduced rate to employers, including Harris, and that UPC, through its subsidiary PRL, denied or delayed disability benefits to Abrahamson. More is needed to sufficiently allege a RICO violation against UPC. There are absolutely no factual allegations demonstrating that UPC directed the affairs of an association-in-fact consisting of UPC, PRL, Harris, and HealthSouth. Moreover, Zalesiak fails to allege any wrongdoing on UPC's behalf. At best, Zalesiak attempts to argue that UPC is responsible for PRL's alleged acts of mail fraud on agency principles. However, Zalesiak failed to plead allegations that UPC did anything other than delegate discretionary authority to its subsidiary, PRL, and failed to plead that UPC directed or participated in the affairs of the enterprise.[2]

---

[2] Because Zalesiak chose to make UPC the RICO "person", Zalesiak also failed to plead that PRL participated in the control of the parent, UPC. *Fitzgerald*, 116 F.3d at 227 (*citing Reeves*, 113 S. Ct. at 1170) ([the Seventh Circuit's] decision in [*Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384 (7th Cir. 1984)] allowed the subsidiary to be deemed the RICO 'person' conducting the affairs of its parent through a pattern of racketeering activity, but the Supreme

Additionally, Zalesiak failed to allege any specific acts of wrongdoing by UPC. Allegations of fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead "all averments of fraud . . . with particularity." Rule 9(b) is of course applicable to allegations of fraud in a civil RICO complaint. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc*., 20 F.3d 771, 777 (7th Cir. 1994); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). Accordingly, a RICO plaintiff "must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding*, 976 F.2d at 1020. Moreover, in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify *each* defendant of his alleged participation in the scheme. *See Vicom*, 20 F.3d at 778. Zalesiak failed to plead any factual allegations with respect to UPC associated with the sixteen predicate acts of mail fraud with specificity. Even with respect to PRL, Zalesiak pleads in a conclusory fashion without any factual support that the letters were false.

Zalesiak's RICO Count is untimely and fails to state a cause of action. This is Zalesiak's third attempt to plead a RICO cause of action and this Court finds no justifiable reason to allow a fourth.

---

Court's decision in *Reeves* imposes the requirement, in that situation, that "the subsidiary participate in the control of the parent.").

## **Conclusion**

For the foregoing reasons, Count I is dismissed with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: December 12, 2007